UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

LAMAR BURTON,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:20-cv-1134

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Davids, Jex, Oversmith, and Unknown Party. Plaintiff's Eighth Amendment claim and First Amendment retaliation claim against Defendant Huyge remain in the case.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC and the following ICF officials or employees: Warden John Davids; Physician's Assistant (PA) Unknown Huyge; an unknown nurse named as "RN-13" (Unknown Party); Prisoner Counselor (PC) M. Jex; and Resident Unit Manager (RUM) Oversmith.

Plaintiff's complaint is one of six that he filed between September 2020 and January 2021. The allegations appear to pick up where those in *Burton v. Mich. Dep't of Corr.*, No. 1:20-cv-858 (W.D. Mich.), leave off. In Case No. 1:20-cv-858, Plaintiff alleged that he had been deprived of supports for a brace, a basin, and Epsom salts with which to treat nerve pain in his arm for four months, between September 10, 2019, and January 9, 2020, while he was housed at the Michigan Reformatory (RMI), which is also located in Ionia, Michigan. The instant complaint alleges that, although he was finally approved to have the basin and Epsom salts on January 9, 2020, he was transferred to ICF before he could routinely receive them.

Plaintiff states that, on January 10, 2020, he was forced or pressured by a prisoner to stab another prisoner 15 times, which aggravated his arm and hand pain. Plaintiff arrived at ICF on February 12, 2020. During his intake visit, Petitioner told Nurse Tribble (not a Defendant) about the pain in his hand and arm that required soaking when it seized up. Plaintiff sent kites to health care on February 13, 16, 17, 20, 21, and 23, 2020, explaining that his arm and hand pain had increased since the stabbing and that he required a basin. Plaintiff also sent a kite to Defendant

Warden Davids and PC Amboy (not a Defendant) on February 20, 2020. Plaintiff submitted a Step-I grievance to the grievance coordinator on February 21, 2020.[1]

On February 24, 2020, Plaintiff had a medical visit with Defendant PA Huyge. Plaintiff explained his ongoing severe pain and his need for an arm brace and a basin for soaking his arm, to relieve the pain when his arm locked up. Defendant Huyge, however, discontinued Plaintiff's detail for the basin and took away the arm brace. Defendant Huyge allegedly told Plaintiff, "[N]ow you have a reason to write your grievance[]s." (Compl., ECF No. 1, PageID.3.)

Plaintiff received notification that he was still on modified grievance access. He therefore sent a kite to Grievance Coordinator Unknown Yuhas (not a Defendant) on February 25, 2020, seeking a grievance form to complain about Defendant Huyge's actions. Yuhas denied Plaintiff a grievance form. Plaintiff sent additional requests for grievance forms to Yuhas on February 26, 27, and March 2, 2020. All were denied.

Plaintiff sent numerous kites to healthcare about his ongoing issues, his desire to be seen by the neurosurgeon, and his assertion that his rights were being denied: February 28, March 6, March 12, March 20, April 1, April 15, May 8, May 16, June 5, and June 6, 2020. Plaintiff sent additional requests for grievance forms on July 4 and July 13, 2020, and he apparently received one form. However, Grievance Coordinator Yuhas rejected that grievance at Step-I review.

On August 13, 2020, Plaintiff was called out to be seen in health care. Plaintiff again reported his symptoms to Defendant Huyge, and he asked to see the neurosurgeon and to get his arm brace and soaking basin back. Defendant Huyge allegedly told Plaintiff that he would not

---

[1] Plaintiff alleges that he was placed on grievance restriction while at RMI, and he indicates that, at the time he filed his grievance, he was unaware whether that restriction followed him to ICF.

3

be seeing the neurosurgeon and would not be getting the arm brace or basin—purportedly because Plaintiff had filed grievances—so Plaintiff might as well stop filing health care kites about the matter. Defendant Huyge also told Plaintiff that his seizure medications would not be reissued for the same reason.[2]

Plaintiff sent additional kites to health care on September 8 and 12, 2020. He was seen in healthcare by nurse on September 14, 2020, and he again explained his symptoms and asked to be seen by the neurosurgeon. The nurse told Plaintiff that a chart review would be conducted for the PA. Plaintiff sent another request to health care on September 21, 2020, again asking to be seen by the neurosurgeon.

On September 25, 2020, Plaintiff stopped Defendant RUM Oversmith while she was doing her rounds. Plaintiff gave Oversmith actual knowledge of his issues with health care and requested her help. Defendant Oversmith did not take any action.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Defendant Huyge's discontinuation of Plaintiff's seizure medications on February 24, 2020, shortly after Plaintiff arrived at ICF, is the subject of another of Plaintiff's recent complaints. *Burton v. Mich. Dep't of Corr. et al.*, No. 1:20-cv-859 (W.D. Mich.). In that complaint, Plaintiff raised the identical allegation about Defendant Huyge's statement. (1:20-cv-859, ECF No. 1, PageID.7.) Plaintiff's current complaint does not assert a claim arising out of the denial of seizure medications.

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.   MDOC

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has

expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC therefore also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

**IV. Supervisory liability**

Plaintiff sues Defendants Warden Davids, Prisoner Counselor Jex, and RUM Oversmith, alleging that he either sent kites to them complaining about inadequacies in his medical care or that he told them about such inadequacies, but they failed to take action.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

6

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted).  We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

In addition, a plaintiff must show that a defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act).  Administrative or custody officials who have no training or authority to contravene the decisions of healthcare officials cannot be held liable for those officials'

7

inadequate care. *See Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell* 867 F.2d at 959).

Plaintiff fails to allege any facts showing that Defendants Davids, Jex, and Oversmith, as custody officials, had the authority to contravene or second-guess decisions by healthcare officials or that they encouraged or condoned inadequate treatment by healthcare officials, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct beyond a claim that he complained to them that healthcare officials denied him certain accommodations that he believed he needed. Plaintiff's allegations of supervisory responsibility are conclusory and insufficient to demonstrate that Defendants were personally involved in the alleged inadequacy of his medical treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action against Defendants Davids, Jex, and Oversmith is premised on nothing more than respondeat superior liability, his action fails to state a claim.

**V.      Lack of allegations**

Plaintiff makes no factual allegations against the Defendant he names as "RN-13" (Unknown Party), other than to claim that the nurse is responsible for failing to provide him adequate medical care. It is a basic pleading essential that a plaintiff attribute factual allegations

8

to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention Defendant RN-13 in the body of his complaint, other than to conclude that he or she is liable for failing to treat Plaintiff. Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff therefore fails to state a claim against Defendant Unknown Party.

## VI. Defendant Huyge

Plaintiff alleges that Defendant Huyge failed to provide Plaintiff with necessary medical accommodations, including a basin in which to soak Plaintiff's arm and an arm brace, which Plaintiff claims are necessary to treat his serious arm pain. Plaintiff also alleges that Defendant Huyge removed the previously approved accommodations in retaliation for Plaintiff having filed grievances against healthcare officials, including Defendant Huyge.

On initial review, the Court concludes that Plaintiff's allegations are sufficient to state both an Eighth Amendment claim and a First Amendment retaliation claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Davids, Jex, Oversmith, and Unknown Party will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim and First Amendment retaliation claim against Defendant Huyge remain in the case.

An order consistent with this opinion will be entered.


Dated:  March 23, 2021                          /s/ Paul L. Maloney
                                                                                          Paul L. Maloney
                                                                                         United States District Judge